UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA RODRIGUEZ, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company; HARLEY-DAVIDSON FINANCIAL SERVICES, INC., a Delaware corporation,<br><br>    Defendants. | Case No.: 3:21-cv-01421-BEN-KSC<br><br>**ORDER GRANTING DEFENDANT HARLEY-DAVIDSON FINANCIAL SERVICES, INC.'S MOTION TO COMPEL ARBITRATION AND GRANTING-IN-PART THE REQUEST TO STAY**<br><br>**[ECF No. 13]** |

## I.   INTRODUCTION

Plaintiff Joshua Rodriguez brings this action against Defendants Equifax Information Services, LLC ("Equifax") and Harley-Davidson Financial Services, Inc. ("Harley") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA") as well as the California Consumer Credit Reporting Agencies Act, CAL. CIV. CODE §§ 1785.1 *et seq.* (the "CCRAA"). ECF No. 1 at 1–2, ¶ 1.

Before the Court is Harley's Motion to Compel Arbitration. The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. *See* ECF No. 19. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** Harley's Motion to Compel Arbitration and **GRANTS-IN-PART** the request to stay.

## II. BACKGROUND

Plaintiff's claims against Defendants arise from the alleged furnishing of inaccurate, false, and misleading information that resulted in Plaintiff suffering economic harm, including a significantly lower consumer credit score.

### A. Statement of Facts[1]

In April 2017, Plaintiff financed a Harley-Davidson motorcycle with Jack Powell Chrysler Dodge Jeep Ram ("the Dealership") in Escondido, California. ECF No. 1 ("Compl.") at 3,[2] ¶ 10. Plaintiff signed a Promissory Note and Security Agreement (the "Contract") with Eaglemark Savings Bank ("Eaglemark").[3] Ex. A to Declaration of Hemlata Mistry, ECF No. 20 ("Mistry Decl.") at 4–8. The Contract includes among other things, information regarding the financing of the motorcycle and a provision governing dispute resolution and arbitration (the "Arbitration Provision"). *Id.*

In June 2018, Plaintiff "traded in the motorcycle for another vehicle." *Id.* at 3, ¶ 11. Plaintiff alleges that when he made the trade-in, the Dealership (acting as Harley's agent) offered to make final payments on the motorcycle to Harley, in exchange for Plaintiff's agreement to finance another vehicle. *Id.* at 3, ¶ 12. Plaintiff's account was eventually paid in full and closed on August 1, 2018, but the Dealership failed to make the final

---

[1] The majority of the facts set forth herein are taken from Plaintiff's Complaint. However, certain facts were supplied by the parties' briefing.

[2] Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

[3] The Contract attached to Harley's Motion briefing includes only Plaintiff's signature and not Eaglemark's. *See generally* Ex. A to Mistry Decl. at 4–8. However, the Court will disregard this issue, because Plaintiff concedes that he entered into the Contract with Eaglemark. *See* ECF No. 17 at 9.

payments to Harley in a timely manner. *Id.* at 4, ¶¶ 14, 19. The Dealership's failure to timely pay resulted in Harley furnishing false and inaccurate information to credit reporting agencies claiming Plaintiff had failed to make payments under the lease. *Id.* at 4, ¶¶ 20.

In March 2021, Plaintiff submitted a written dispute to Equifax challenging the late marks on his credit report. *Id.* at 6, ¶ 31. On April 16, 2021, Equifax responded that Harley had verified that Plaintiff's payment history had been correctly reported. *Id.* at 6, ¶ 32. Plaintiff alleges Harley knew or should have known the information furnished was false and inaccurate because it "had in its possession records and documentation" proving such. *Id.* at 4, ¶¶ 21–22.

### B.  **Procedural History**

On August 9, 2021, Plaintiff filed suit against Defendants, bringing six claims for relief. Compl. at 1. As to Harley, Plaintiff alleges violations of the: (1) CCRAA by reporting information it knew or reasonably should have known was false, CAL. CIV. CODE § 1785.25(a); and (2) FCRA by failing to properly investigate Plaintiff's dispute, 15 U.S.C. § 1681s-2(b). *See* Compl. at 12–15. As to Equifax, Plaintiff alleges violations of the: (1) FCRA by failing to conduct a reasonable re-investigation, 15 U.S.C. § 1681i; (2) FCRA by failing to maintain reasonable procedures to ensure maximum possible accuracy, 15 U.S.C. § 1681e; (3) CCRAA by failing to conduct a reasonable re-investigation, CAL. CIV. CODE § 1785.16; and (4) CCRAA by failing to maintain reasonable procedures to ensure maximum possible accuracy, CAL. CIV. CODE § 1785.14. *See* Compl. at 15–23.

On November 9, 2021, Harley filed the instant Motion to Compel Arbitration,[4] which Plaintiff timely opposed, and Harley timely replied. ECF Nos. 13, 17, 18. Plaintiff

---

[4]  Attached to its Motion, Harley filed a Declaration containing references to Exhibit A, the Contract at issue here. ECF No. 13-1. However, the Contract was not attached to the briefing. *See id.* On December 13, 2021, Harley re-filed the Declaration but included the attached Contract as Exhibit A. *See* Ex. A to Mistry Decl. Plaintiff does not dispute the accuracy of the document, nor does he take issue with its late submission. Because the Contract contains the applicable Arbitration Provision, the Court will consider it in deciding Harley's Motion.

also filed supplemental briefing and attached a recent California Appellate Court decision[5] to which Harley replied. ECF No. 24, 25.

### III. DISCUSSION

Harley argues there is a valid Arbitration Provision that governs Plaintiff's claims against it. *See generally* ECF No. 13 ("Motion"). Harley contends that the Court should not decide the threshold issue of arbitrability, because determination of arbitrability was delegated to the arbitrator. *Id.* at 11–13. Harley further argues that the governing law in this matter is federal arbitration law, including the Federal Arbitration Act, and Nevada contract law. *Id.* at 5–10. Plaintiff counters that he never consented to the Arbitration Provision with Harley and therefore, Harley cannot compel arbitration against him. ECF No. 17 ("Oppo.") at 9–11. Plaintiff also argues that the Arbitration Provision is invalid because it is both procedurally and substantively unconscionable, and those unconscionable terms cannot be severed from the Provision. *Id.* at 11–23. The Court disagrees and finds that Plaintiff agreed to arbitrate arbitrability with Harley.

#### A. Jurisdiction

The FAA allows a party aggrieved by another party's failure to arbitrate to bring either an original petition to arbitrate, or where an action has already been filed, a motion to compel arbitration "in any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action ... of the subject matter arising out of the controversy between the parties." 9 U.S.C. § 4. Under 28 U.S.C. § 1331, "[t]he district courts ... have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Plaintiff filed suit for violations of the FCRA and CCRAA. *See* Compl. at 1. Plaintiff's claims under the FCRA give the Court original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's

---

[5] The Court does not find the decision submitted by Plaintiff relevant, because it analyzes the unconscionability of an entire arbitration provision and not a delegation clause contained therein. *See infra* Part III.D.i.

-4-

CCRAA claims pursuant to 28 U.S.C § 1367. Accordingly, the Court has jurisdiction to hear Harley's Motion to Compel Arbitration.

### B. Governing Law

As a preliminary matter, federal substantive law governs the scope of an arbitration agreement. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000). State contract law, on the other hand, governs issues pertaining to the validity, revocability, and enforceability of an agreement to arbitrate. *See, e.g.*, *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716–17 (9th Cir. 2020) (applying California contract law to a wireless services agreement because the agreement's choice-of-law provision states that the contract is governed by the law of the state in which the customer's billing address is located, and the customer resided in California).

Harley argues the Contract "contains a choice of law provision providing that applicable federal and Nevada law apply . . . ." Motion at 5. Harley contends that Plaintiff willingly agreed to the Nevada choice of law provision when he executed the Contract, and that Nevada and California have no fundamental conflicts regarding the law for the claims at issue. *Id.* at 6. Harley further argues that "Nevada has a substantial relationship to the parties or their transaction," because Plaintiff contracted with Eaglemark, which is located in Nevada and regulated by the Nevada Department of Business and Industry, Financial Institutions Division. *Id.* As such, Harley requests that the Court "apply substantive federal law and Nevada contract law to Plaintiff's claims and . . . the Motion to Compel Arbitration." *Id.* To resolve Harley's Motion, the Court will apply relevant federal law and Nevada contract law for two reasons.

First, the Court finds Harley's choice of law argument compelling. The Contract provides that "[e]xcept to the extent specified elsewhere in this Contract, this Contract and

Your account will be governed by the laws of the State of Nevada and applicable Federal law." Ex. A to Mistry Decl. at 7. Plaintiff agreed to the choice of law provision by signing the Contract and advances no challenge to its validity—Plaintiff only challenges the Arbitration Provision. *See id.* at 5, 7; *see generally* Oppo.

Second, where a non-moving party fails to address an argument raised by the moving party in his opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their ... opposition to the defendants' motion for summary judgment, so the argument was waived."); *see also* S.D. Cal. Civ. R. 7.1. Here, Plaintiff does not dispute that substantive federal law and Nevada contract law apply to the Contract at issue and uses some Nevada law in arguing that the Arbitration Provision is unconscionable. Oppo. at 11. However, Plaintiff also relies on Ninth Circuit and California case law (without specifying the law being applied) throughout his Opposition and supplemented his briefing with a recently decided California appellate decision. *See generally* Oppo.; ECF No. 24. Because Plaintiff fails to challenge the choice of law provision and Harley's arguments—and relies to some extent on Nevada case law—the Court finds Plaintiff waived any argument that California law should govern. Accordingly, federal arbitration law and Nevada contract law will govern the resolution of Harley's Motion.

C. **Federal Arbitration Act**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract," 9 U.S.C. § 2. The FAA provides that once a defendant files a motion to compel arbitration, a district court must "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not" at issue, must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. It "reflects both a 'liberal federal policy favoring arbitration' ... and the 'fundamental principle that

arbitration is a matter of contract.'" *Kramer*, 705 F.3d at 1126 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

The district court's role in ruling on a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists[,] and if it does, (2) whether the agreement encompasses the dispute at issue." *Revitch*, 977 F.3d at 716. Only if the court answers both questions in the affirmative will the FAA require the Court "to enforce the terms of the arbitration agreement in accordance with its terms." *Id.* The Supreme Court has instructed that "courts should order arbitration of a dispute only where the court is satisfied that neither [1] the formation of the parties' arbitration agreement *nor* [2] (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original).

As an initial matter, for the Court to compel arbitration under the FAA, Plaintiff's FCRA claim must pertain to interstate commerce. Subject to certain exceptions, the FAA "governs arbitration agreements in contracts involving interstate commerce." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1058–60 (9th Cir. 2020) (applying Arizona contract law). Section 1 of the FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. The Court finds the Contract here involves interstate commerce for two reasons.

First, the Arbitration Provision explicitly states that the transaction involves interstate commerce and that any claims will be governed by the FAA. Ex. A to Mistry Decl. at 8. Plaintiff makes no challenge to this portion of the Arbitration Provision or to Harley's argument that the Contract involves interstate commerce. *See* Oppo. at 9 (citing the FAA as authority in one instance). Second, this Court and at least one other court in this district have held that similar automobile purchase and finance contracts affect interstate commerce for purposes of ruling on a motion to compel arbitration. *See Hamby v. Power Toyota Irvine*, No. 11-cv-0544-BTM-BGS, 2012 WL 13036860, *1–2 (S.D. Cal. Mar. 22, 2012) (Moskowitz, J.) (holding a sales contract to purchase and finance an

-7-

3:21-cv-01421-BEN-KSC

automobile affected interstate commerce for purposes of compelling arbitration, when the plaintiff's claims arose out of a credit extension from the dealership in connection with the sale of the vehicle); *Camarillo v. Balboa Thrift & Loan Ass'n*, No. 20-cv-00913-BEN-BLM, 2021 WL 409726, at *10 (S.D. Cal. Feb. 4, 2021) (citing *Hamby*, No. 11-cv-0544-BTM-BGS, 2012 WL 13036860, *1–2) (finding a retail installment sales contract for an automobile that resulted in claims under the FCRA affected interstate commerce under the FAA). Accordingly, this case involves interstate commerce as required by the FAA.

### D. Delegation of the Issue of Arbitrability

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Where the parties to an arbitration agreement "clearly and unmistakably" agree that an arbitrator will decide gateway issues, the arbitrator, rather than the Court, will decide those issues. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such [c]lear and unmistakable evidence of agreement to arbitrate arbitrability might include ... a course of conduct demonstrating assent ... or ... an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (citations and internal quotation marks omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). This remains "true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

Harley argues "the Court need not address the threshold question of whether a valid and enforceable arbitration agreement exists . . . ," because the parties "agreed to arbitrate . . . 'the applicability of this arbitration clause.'" *Id.* at 11–12. Based on the language of the Arbitration Provision, the Court finds an express agreement to arbitrate gateway issues of arbitrability. The Delegation Clause of the Arbitration Provision provides that:

> Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before the American Arbitration Association ("AAA" or "Arbitration Forum").  You may obtain a copy of the rules by calling (1-800-778-7879) or visiting their Web site.

Ex. A to Mistry Decl. at 8.  Here, the language of the Delegation Clause clearly and unmistakably delegates to the arbitrator questions of arbitrability, because it states that "[a]ny claims, including but not limited to the applicability of this arbitration clause, shall be resolved by binding neutral arbitration." *Id.*  In addition, the Clause incorporates the AAA rules and provides instructions on how to obtain a copy of such. *Id.*  In *Brennan v. Opus Bank*, the Ninth Circuit held "that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d 1125, 1130 (9th Cir. 2015).  The parties in *Brennan* were sophisticated but the Court did "not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." *Id.*  Several courts have subsequently held that *Brennan* likewise applies to unsophisticated parties and consumer contracts. *See, e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (applying *Brennan* to a consumer contract involving an arbitration requirement in Uber Technologies, Inc.'s terms and conditions); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("The 'greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.'"); *Miller v. Time Warner Cable Inc.*, No. 16-cv-00329-CAS-ASX, 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (holding that "incorporation of AAA's rules clearly and unmistakably shows the partis' intent to delegate the issue of arbitrability to the arbitrator" in the context of a consumer subscriber agreement with Time Warner Cable, Inc.); *Maybaum v. Target Corp.*, No. 22-cv-00687-MCS-JEM, 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022) ("[T]he majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties.").  Therefore, based on the express language of the Delegation

Clause and incorporation of the AAA rules, the agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question [of] 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.").

In *Henry Schein*, the Supreme Court held that valid clauses delegating arbitrability must be enforced. 139 S. Ct. at 529–30. However, "before referring the dispute to an arbitrator, the court determines whether a valid arbitration agreement [delegating arbitrability] exists." 139 S. Ct. at 529 (citing 9 U.S.C. § 2). In addition to evaluating the terms of the agreement, "courts may examine a course of conduct demonstrating assent . . . ." *Erwin v. Citibank, N.A.*, No. 16-cv-03040-GPC-KSC, 2017 WL 1047575, at *4 (S.D. Cal. Mar. 20, 2017) (citing *Momot*, 652 F.3d at 988). However, because the text of the Contract expressly delegates arbitrability, as held in *Rent-A-Ctr.*, the Court must be careful to only address challenges to Delegation Clause and not the Arbitration Provision as a whole. 561 U.S. 63, 72 (2010) ("Section 2 [of the FAA] operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce. Accordingly, unless [the party opposing arbitration] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). If the Clause is valid, all remaining validity challenges must be arbitrated.

Plaintiff argues that he did not agree to the Arbitration Provision with Harley, and that the Provision is unconscionable. To the extent permitted, the Court addresses Plaintiff's arguments below.

### i. *Unconscionability*

"When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Rent-A-Ctr.*, 561 U.S. at 73). In Nevada, courts generally require that both procedural and substantive unconscionability "be present in order for a court to exercise its discretion to refuse to

enforce a contract or clause as unconscionable." *Burch v. Second Jud. Dist. Ct. of State ex rel. Cty. of Washoe*, 118 Nev. 438, 443 (2002).  Plaintiff argues the Arbitration Provision is both procedurally and substantively unconscionable.  Oppo. at 11.

Plaintiff argues the Arbitration Provision is procedurally unconscionable, because it gave Plaintiff no opportunity to negotiate the terms, making it an unenforceable adhesion contract.  *Id.* at 13.  Plaintiff further argues that he "has no background, training, or experience in the legal system or in ADR procedures, and had no idea what he was actually giving up by signing the 'Agreement.'"  *Id.*  Plaintiff contends this was a "take it or leave it" Contract and that as the weaker party, he was "under economic coercion to proceed with the with the transaction." *Id.*

As to substantive unconscionability, Plaintiff points to numerous terms in the Arbitration Provision.  *Id.* at 14.  Plaintiff argues the arbitration award limits both his damages and attorneys' fees. *Id.* at 15–19.  Plaintiff further argues there is discretionary language regarding the arbitrator's ability to award attorneys' fees, "which directly undermines the fact that the causes of action pursued by Plaintiff here require attorneys' fees and costs . . . ."  *Id.* at 22.  Plaintiff also contends that enforcement of the Arbitration Provision is unilateral because: (1) Harley is not a party to the agreement but attempts to enforce it based on an alleged assignment of rights; and (2) the corporate entity is permitted to bring a court action to recover the vehicle, but there is no other scenario in which the corporation would seek claims against the consumer under the Arbitration Provision.  *Id.* at 19–21. Essentially, Plaintiff is arguing only he can be compelled to arbitrate under the Provision, making it unilateral.  *See id.*  Plaintiff argues the bar on class actions and collective proceedings along with the severability clause also make the Provision unilateral. *Id.* at 21.

None of Plaintiff's arguments specifically challenge the Delegation Clause at issue. Assuming *arguendo* that Plaintiff's procedural unconscionability argument applies to the

Delegation Clause—and that Plaintiff could succeed on that argument[6]—Plaintiff would also have to establish substantive unconscionability to prevail.  Plaintiff's arguments for substantive unconscionability refer to several portions of the Arbitration Provision, but none of them challenge the text of the Delegation Clause.  Because the Plaintiff fails to challenge the Delegation Clause specifically, the Court cannot address Plaintiff's unrelated substantive unconscionability arguments.  *See Rent-A-Ctr.*, 561 U.S. at 86 ("A claim that an entire arbitration agreement is invalid will not go to the court unless the party challenges the particular sentences that delegate such claims to the arbitrator, on some contract ground that is particular and unique to those sentences.").  Without such a challenge to the Delegation Clause, Plaintiff is "bound to pursue his validity claim in arbitration." *Id.* at 87.

Plaintiff's argument that the unconscionable portions of the Arbitration Provision cannot be severed—rendering the entire Provision unconscionable—also fails, because delegation clauses can be severed from potentially invalid arbitration agreements.  *See id.* at 85 ("Courts may now pluck from a potentially invalid *arbitration agreement* even narrower provisions that refer particular arbitrability disputes to an arbitrator.").  As such, Plaintiff cannot establish substantive unconscionability, which is required for Plaintiff's unconscionability defense.  Accordingly, the Court does not find unconscionable the Delegation Clause in the Arbitration Provision.

---

[6] Plaintiff's procedural unconscionability argument is undermined by the opt-out provision, which allows Plaintiff sixty (60) days to opt-out of the Arbitration Provision altogether, with no effect on the remaining terms of the Contract.  *See* Ex. A to Mistry Decl. at 8.  Accordingly, even if Plaintiff were to succeed on his substantive unconscionability claims, given Plaintiff's opportunity to opt-out, it is unlikely that the Court would find the Arbitration Provision procedurally unconscionable.  *See Obstetrics & Gynecologists William G. Wixted, M.D., Patrick M. Flanagan, M.D., William F. Robinson, M.D. Ltd. v. Pepper*, 101 Nev. 105, 107 (1985)) (citing *Wheeler v. St. Joseph Hosp.*, 63 Cal. App. 3d 345, 133 (1976)) ("The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms.").

### ii. *Agreement to Delegate Arbitrability*

"In the 'absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories,' the district court has authority to decide the issue of whether a non-signatory can compel arbitration. *Aliff v. Vervent, Inc.*, No. 20-cv-00697-DMS-AHG, 2020 WL 5709197, at *7 (S.D. Cal. Sep. 24, 2020) (quoting *Kramer*, 705 F.3d at 1127). Courts have found no agreement to arbitrate arbitrability when there was no notice of or opportunity to reject the terms of arbitration, and when the express terms of the agreement were limited to specific parties. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 568–70 (9th Cir. 2014) (applying California law and finding no mutual assent where the plaintiff was not provided notice of the terms, or an opportunity to reject or unambiguously manifest his assent to the terms); *Aliff*, No. 20-cv-00697-DMS-AHG, 2020 WL 5709197, at *7 (rejecting the argument that the plaintiff agreed to arbitrate arbitrability with the loan servicer, because the terms of the arbitration provision were limited to the plaintiff and the lender and did not include the loan servicer). This case is distinguishable. Based on Plaintiff's written signature on the Contract, his failure to opt-out of the Arbitration Provision, and the express language of the Provision itself, there is clear and unmistakable evidence that Plaintiff agreed to arbitrate arbitrability with non-signatory, Harley.

First, Plaintiff does not dispute that he signed the Contract containing the Delegation Clause. Plaintiff's unconscionability argument that "he had no idea what he was actually giving up by signing the 'Agreement,'" could arguably go to Plaintiff's capacity to consent to the terms. *See* Oppo. at 13. However, Plaintiff has not set forth any circumstances under which his full legal capacity to contract with Harley would be questioned. *See Gen. Motors v. Jackson*, 111 Nev. 1026, 1031 (1995) (explaining that a person "has full legal capacity to incur contractual duties . . . unless he is" under guardianship, an infant, mentally ill or defective, or intoxicated). Here, Plaintiff argues he did not know what he was giving up by signing the Contract, but he is not arguing that he was incapable of knowing what he was giving up. *See id.* ("Capacity involves whether [the person] had the *ability* to

understand the agreement," but if "a person possesses sufficient mental capacity to understand the nature of the transaction and is left to exercise his own free will, his contract will not be invalidated because he was of a lesser degree of intelligence than his co-contractor, because he was fearful, worried or nervous, or lacked the ability to concentrate . . . ."). Plaintiff's written signature on the Contract containing the Delegation Clause evidences a manifestation of Plaintiff's assent to the terms therein. *See Bergman v. Electrolux Corp.*, 558 F. Supp. 1351, 1353 (D. Nev. 1983) (signatures on a written agreement manifested mutual assent).

Second, Plaintiff does not argue that he exercised his right to opt-out of the Arbitration Provision. The Provision contains an "Opt-out option" allowing Plaintiff sixty (60) days to opt-out of the Provision altogether. Ex. A to Mistry Decl. at 8. Plaintiff could have either: (1) called the number provided to request an opt-out form; or (2) sent a letter to the listed address, indicating his choice to opt-out and referencing his name, address, and account number. *Id.* The opt-out option undermines any argument that Plaintiff did not assent to the terms of the Delegation Clause contained in Arbitration Provision. Plaintiff could have moved forward with the Contract without being bound to arbitration and was given simple and specific instructions on how to do so. Because Plaintiff signed the Contract and had the opportunity to reject the Arbitration Provision altogether, his course of conduct demonstrates assent to the terms therein.

Moving to the language of the Arbitration Provision, as explained *supra*, the parties delegated arbitrability to the arbitrator. *See supra* Part III.D. The Provision also expressly subjects Plaintiff and Eaglemark's "successors, assigns, parents, subsidiaries, or affiliates" to its terms. *Id.* Harley contends that Eaglemark and Harley-Davidson Credit Corp. ("HDCC"), the assignee as alleged by Harley,[7] are its wholly owned subsidiaries, making

---

[7] The Court does not conclude that HDCC is the assignee of the Contract because this determination is not necessary to decide Harley's Motion. Furthermore, Plaintiff does not address Harley's argument that the Contract was assigned to HDCC. Plaintiff challenges only the assignment of the Contract from Eaglemark to Harley, but there is no argument that the Contract was assigned to Harley.

-14-

it the parent to both companies. *See* Motion at 4; Mistry Decl. at 1, ¶ 4. Plaintiff does not challenge that Harley is Eaglemark's or HDCC's parent.[8] Accordingly, by the express terms of the Contract, Plaintiff agreed to arbitrate arbitrability with any parent company of Eaglemark, which includes Harley. The Arbitration Provision must be enforced according to its terms. *See Mohamed*, 848 F.3d at 1209 (citing *Rent-A-Ctr.*, 561 U.S. at 67) ("In accordance with Supreme Court precedent, we are required to enforce these agreements 'according to their terms' and, in the absence of some other generally applicable contract defense, such as fraud, duress, or unconscionability, let an arbitrator determine arbitrability . . . ."); *McLellan*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2 ("The language of the parties' agreement is the primary evidence of whether they intended to delegate arbitrability."); *see also Eighth Jud. Dist. Ct.*, 131 Nev. 713, 721 (2015) (holding non-signatory defendants could enforce arbitration, explaining that "[b]y its terms, the long-form arbitration agreement covers claims not only against CPS but also 'against its officers, directors, managers, employees or agents.'"). Whether Plaintiff is bound by Harley to arbitrate his claims, however, is for the arbitrator to decide. The Court's sole finding is that Plaintiff agreed to delegate issues of arbitrability to the arbitrator for purposes of Harley's Motion to Compel Arbitration.

### E. Request to Stay Action Pending Arbitration

Where a plaintiff files suit "in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for ... arbitration, the court in which such suit is pending, upon being satisfied that the issue ... is referable to arbitration ... shall on application of one of the parties stay the trial of the action until such arbitration." 9 U.S.C. § 3. A court's power to stay proceedings is incidental to the inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). A stay may be

---

[8] Again, Plaintiff only challenges the assignment of the Contract from Eaglemark to Harley. Plaintiff fails to address Harley's argument that Eaglemark and HDCC are its wholly owned subsidiaries.

granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. "[I]f there is even a fair possibility that the stay ... will work damage to some one else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted).

Here, because the parties delegated the issue of arbitrability to the arbitrator, the Court has not decided which, if any, of Plaintiff's claims are subject to arbitration. The authority to decide whether any claims fall within the scope of the Arbitration Provision has been expressly delegated to the arbitrator. In the interest of justice and in order to avoid duplicative proceedings, the Court finds a stay of the claims against Harley is proper under the circumstances here, pending a decision on the arbitrability of Plaintiff's claims. Accordingly, the Court **GRANTS-IN-PART** a stay of the case.

The matter is stayed as to Plaintiff's claims against Harley only. There are no arguments that Plaintiff's claims against Equifax are subject to arbitration or that the claims against Equifax should be stayed. Accordingly, Plaintiff's claims against Equifax may proceed. *McLellan*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *5 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 (1983)) ("Parallel proceedings may raise the risk of inconsistency, but the FAA contemplates 'requir[ing] piecemeal resolution when necessary to give effect to an arbitration agreement.' Moreover . . . Fitbit has not shown that the outcome of the arbitration proceedings will have any effect on this Court's consideration of Dunn's claims."). Plaintiff and Harley must file a Joint Status Report within ten (10) days of the arbitrator's decision regarding the arbitrability of

Plaintiff's claims.

## IV. CONCLUSION

For the above reasons, the Court rules as follows:

1. Harley's Motion to Compel Arbitration is **GRANTED**.

2. Harley's Motion to Stay is **GRANTED-IN-PART** as to Plaintiff's claims against Defendant Harley only. Plaintiff's claims against Defendant Equifax will proceed.

3. Harley and Plaintiff must file a Joint Status Report **within ten (10) days** of the arbitrator's decision regarding arbitrability.

**IT IS SO ORDERED.**

DATED: June 9, 2022

**HON. ROGER T. BENITEZ**
United States District Judge